IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EDWARD G. BYFORD, JR., <br><br>            Petitioner, <br><br>vs. <br><br>NANCY DAHLSTROM, Commissioner, Alaska Department of Corrections,[1] <br><br>            Respondent. | No. 3:16-cv-00198-JKS <br><br> MEMORANDUM DECISION |

Edward G. Byford, Jr., a former state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, Byford was in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Wildwood Correctional Center. Public records indicate that Byford was released on probation on July 23, 2019, and is now under supervised custody.[2] *See* https://vinelink.

---

[1] Because Byford has been released from incarceration but is on post-release supervision, Nancy Dahlstrom, Commissioner, Alaska Department of Corrections, is substituted for Shannon McCloud, Superintendent, Wildwood Correctional Complex. FED. R. CIV. P. 25(c).

[2] A jurisdictional prerequisite of 28 U.S.C. § 2254 is that the petitioner be "in custody pursuant to the judgment of a state court." Although Byford is no longer in physical custody, the conditions and restraints inherent in parole are sufficient to satisfy the custody requirement. *Jones v. Cunningham*, 371 U.S. 236, 242 (1963). Byford is thus currently in the custody of the Alaska Department of Corrections, and the Petition is properly before this Court.

-1-

vineapps.com/search/AK (Inmate No. 179202). Respondent has answered, and Byford has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On August 27, 2009, Byford was charged with scheme to defraud, first-degree theft, second-degree theft, and deceptive business practices in an indictment that alleged that, over the course of two-and-a-half years, Byford reneged his promises to build homes for nine people without refunding the hundreds of thousands of dollars the victims had paid up front. The indictment further alleged, in support of the deceptive business practices count, that Byford established a website advertising Byford as a builder of log homes and displaying log cabins that Byford had purportedly built, but in reality the cabins had been built by other people.

Byford pleaded not guilty and proceeded to a jury trial. At trial, the prosecution presented various witnesses who testified that they had signed contracts for Byford to build them log homes, but he did not properly build them or refund the money. The prosecution also presented the testimony of the website developer who had created Byford's website, as well as a builder who testified that many of the images on the website were of homes he, and not Byford, had built. The deputy commander of the Alaska Bureau of Investigation analyzed Byford's bank accounts and testified that Byford's conduct was consistent with criminal behavior and reflected that Byford was using his business accounts to fund his personal lifestyle. Byford's son and an employee testified on Byford's behalf that Byford was simply a bad businessman and had suffered theft and other losses beyond his control during the time in question. Both individuals testified that Byford did not lead an extravagant lifestyle and made just enough to get by. Byford's employee testified that Byford made large purchases for his business in cash but did not keep receipts. The defense's theory of the case was that Byford was simply a bad businessman who lacked intent to commit any of the charged crimes.

At the conclusion of trial, the jury found Byford guilty of scheme to defraud, first-degree theft (by deception), and deceptive business practices. The superior court merged the three

verdicts into one conviction for scheme to defraud. The court sentenced Byford to six years' imprisonment with three years suspended, and ten years of probation. The court later entered a monetary judgment against Byford, ordering him to pay the victims a total of $219,688.00 in restitution.

Through counsel, Byford appealed the conviction, arguing that: 1) there was insufficient evidence to convict Byford of deceptive business practices; 2) the trial court erred in instructing the jury that it need not be unanimous as to the type of scheme to defraud; 3) the trial court erred at sentencing by finding true two aggravators; and 4) the sentence was excessive. The State cross-appealed, challenging the superior court's decision to merge the three jury verdicts into a single conviction. The Court of Appeals unanimously agreed with the State that Byford should have received a separate conviction and sentence for the crime of deceptive business practices and ordered that the judgment be so amended, but affirmed the judgment and sentence in all other respects in a reasoned decision issued on June 26, 2015. *Byford v. State*, 352 P.3d 898 (Alaska Ct. App. 2015). Byford petitioned for hearing in the Alaska Supreme Court, raising only his instructional error claim, which was summarily denied on December 17, 2015.

While his direct appeal was pending, Byford filed in the Alaska Superior Court a counseled application for post-conviction relief, alleging that his trial counsel was ineffective in a variety of ways. The State moved to dismiss for failure to state a *prima facie* case on any of the ten specified claims of ineffective assistance, which the superior court granted. Byford appealed the denial, arguing only that the trial court erred in dismissing for failing to present a *prima facie* case two of the claims raised to that court: 1) failure to obtain an independent financial expert; an 2) failure to seek admission under the business records exception to the hearsay rule of a "daily log" created by Byford. The Alaska Court of Appeals unanimously affirmed the decision of the superior in a reasoned, unpublished opinion issued on March 15, 2017. *Byford v. State*, No. A-11832, 2017 WL 1040352, at *5 (Alaska Ct. App. Mar. 15, 2017).

While his direct appeal and post-conviction relief application were pending, Byford filed

a *pro se* application in the state trial court to correct the record of the underlying criminal case. In that application, Byford pointed to various instances in the official record in which he alleged that the official transcripts and recordings had been erroneously omitted. The superior court granted the State's motion to strike the *pro se* application on the ground that Byford was represented by counsel on both direct appeal and in the post-conviction proceedings.

While those motions were pending in state court, Byford timely filed a *pro se* petition for a writ of habeas corpus in this Court dated August 24, 2016. Docket No. 1. This Court, through a previously-assigned district judge, appointed counsel for Byford. Docket No. 4. Appointed counsel filed an unopposed motion for a stay of federal proceedings pending the resolution of Byford's petition for hearing in the Alaska Supreme Court of the denial of his post-conviction relief application, Docket No. 9, which was granted, Docket No. 10. After the petition for hearing was denied, the stay was lifted and Byford was ordered to file an amended petition. Docket No. 26. An amended petition for writ of habeas corpus was filed on October 5, 2019. Docket No. 42 ("Petition"). Briefing is now completed, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Byford raises four grounds for relief. First, Byford alleges that the trial court erred when it instructed the criminal jury that it did not have to be unanimous in deciding whether Byford was guilty on Count 1 (scheme to defraud) for engaging "in conduct constituting a scheme to defraud five or more persons by false or fraudulent pretense, representation, or promise" *or* for engaging "in conduct constituting a scheme to defraud one or more persons of $10,000 or to obtain $10,000 or more from one or more persons by false or fraudulent pretense, representation, or promise." Byford next contends that the transcript record of the underlying criminal trial is incomplete and inaccurate in a manner that affects his constitutional rights. Third, Byford avers that his direct appellate and post-conviction relief counsel were ineffective for failing to challenge the accuracy of the

-4-

transcript record and move to correct it. Finally, Byford claims that his trial counsel rendered ineffective assistance by failing to conduct an adequate investigation into and obtain an accountant expert to assist him in preparing for trial and to testify regarding Byford's business finances.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

### A. *Instructional Error re: Unanimity* (Ground 1)

Byford first argues that the superior court erred when it instructed the jury on the scheme to defraud count. The Alaska statute defining the crime of scheme encompasses both 1) schemes to defraud five or more persons; and 2) schemes to fraudulently obtain $10,000 or more. ALASKA STAT. § 11.46.600(a). At Byford's trial, the superior court told the jurors that they did not need to be unanimous as to which of these theories the State had proved. According to Byford, this instruction was error because the jurors were required to reach unanimous

-6-

Case 3:16-cv-00198-JKS   Document 48   Filed 03/17/20   Page 6 of 18

agreement as to whether Byford's scheme was designed to defraud five or more persons, or to obtain $10,000 or more. Although trial counsel did not object to the instruction at trial, Byford challenged it on appeal, which the Court of Appeals denied as follows:

> As Byford notes in his brief, there is case law holding that a verdict is flawed if, in a case involving evidence of two different fraudulent schemes, the jury is not required to reach unanimous agreement as to which of these schemes the defendant engaged in or pursued. *See United States v. Mastelotto*, 717 F.2d 1238, 1247–1250 (9th Cir. 1983).
> But the jury instruction in the present case did not say that it was unnecessary for the jurors to agree on Byford's conduct. Rather (as we are about to explain), the challenged instruction told the jurors that they did not have to agree on Byford's intention.
> The charging statute, AS 11.46.600(a), requires the State to prove that the defendant engaged in a scheme, and that the scheme was designed "to defraud five or more persons", or "to obtain property or services from five or more persons by false or fraudulent pretense", or "to defraud one or more persons of $10,000", or "to obtain $10,000 or more from one or more persons by false or fraudulent pretense".
> As this Court explained in *Knix v. State*, 922 P.2d 913 (Alaska App. 1996), even though the scheme to defraud statute seemingly does not specify a culpable mental state, the statute requires proof of the defendant's purpose or design, because the statute employs the words "scheme" and "defraud" in their ordinary meaning:
>
>> As defined by the dictionary, [these] words describe conduct [that is] directed toward a specific objective . . . . [T]he statutory phrase, "scheme to defraud," . . . unmistakably refers to purposive conduct—a scheme—that is intended to achieve a specific result—a fraud. The notion of intentional conduct is thus intrinsic in the ordinary meaning of the term "scheme to defraud."
>
> *Knix*, 922 P.2d at 920.
>
> It is important to note that the statutory language about defrauding five or more people, or about obtaining $10,000 or more, does not define the *results* of the scheme. That is, the State is not required to prove that the defendant actually succeeded in defrauding five or more people, or actually obtained $10,000 or more by fraud. Rather, the State must show that the defendant's scheme was *designed* to achieve these ends (and that the defendant was able to obtain at least some "property or services in accordance with the scheme").
> The legislative commentary to AS 11.46.600—which is found in 1978 Senate Journal Supp. 47 (June 12), pp. 57–58—clarifies that "[i]t is not an element of [this] crime that a specific dollar loss was suffered by a victim of the scheme. [Rather, the] defendant must obtain property or services from at least one of his victims in accordance with the scheme."
> Alaska law requires jury unanimity regarding the act that forms the basis of a criminal conviction. Jurors must "agree upon just what the defendant did". Thus, "when two or more discrete acts, each potentially amounting to a crime, are encompassed in a single charge, the jury must be unanimous in deciding the act upon which it determines [the defendant's] guilt."
>
> But in cases where "only one criminal act [is] alleged and only one incident [is] involved", the jury "need not be unanimous concerning the precise theory of the

-7-

> defendant's guilt." Thus, in *Ward v. State*, 758 P.2d 87, 92 (Alaska 1988), the supreme court held that jurors need not be unanimous as to whether the defendant drove a motor vehicle while impaired or, instead, while their blood alcohol level was above the legal limit. Similarly, in *Totemoff v. State*, 866 P.2d 125, 129 (Alaska App. 1993), this Court held that jurors need not be unanimous as to whether a defendant is guilty because of their own personal actions or because of their complicity in other people's actions. And in *Ragsdale v. State*, 23 P.3d 653, 659 (Alaska App.2001), this Court held that a defendant could lawfully be convicted of sexual assault even though the jurors were not unanimous as to whether the defendant knew that the victim (1) was incapacitated or (2) was unaware that sexual penetration was occurring.
>
> The crime at issue in Byford's case, scheme to defraud, is defined as a course of conduct that is accompanied by one or more of a specified list of purposes or designs. The purposes or designs listed in the statute are not mutually exclusive. Nor do they define a defendant's conduct; rather, they define the aim(s) of the defendant's conduct. Given the applicable case law on this issue, we hold that the jurors did not need to unanimously agree as to which of these purposes or designs had been proved.

*Byford*, 352 P.3d at 901-03 (citations and footnotes omitted).

Because jury instructions in state trials are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995). An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the

-8-

subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*. Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson*, 431 U.S. at 155. In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

Byford fails to satisfy these heavy burdens. In his case, the Alaska Court of Appeals rejected Byford's instructional error claim on direct appeal, rejecting any contention that, under Alaska state law, the juror had to unanimously agree as to which of the purposes under AS 11.46.600(a) had been proved. Again, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. This Court is bound by such determinations of state law, including those of a state intermediate appellate court. *See Hicks v. Feiock*, 485 U.S. 624, 629–30 & n. 3 (1988) (noting that a intermediate appellate state court's determination of state

law is binding and must be given deference by a federal court unless the federal court is convinced the state's highest court would decide otherwise).

Moreover, even if Byford could show error, he would not be entitled to federal habeas relief because there is no federal right to a unanimous jury verdict in a state criminal trial.[3] *See Schad v. Arizona*, 501 U.S. 624, 634 n.5 (1991) ("a state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict"); *Apodaca v. Oregon*, 406 U.S. 404, 410-13 (1972) (no constitutional right to unanimous jury verdict in non-capital criminal cases). Consequently, at least in non-capital criminal cases, courts within the Ninth Circuit have routinely dismissed habeas claims arguing that a state "unanimity" jury instruction was required. *See, e.g., Sullivan v. Borg*, 1 F.3d 926, 927-28 (9th Cir. 1993) (citing *Schad* to find that instruction allowing California jury to convict defendant of first degree murder without unanimity as to whether he had committed felony murder or premeditated murder did not violate petitioner's due process rights). Accordingly, Byford cannot establish a due process violation on his claim that the unanimity instruction was insufficient or improper, and he is not entitled to relief on this ground in any event.

B. *Incomplete and Inaccurate Underlying Record/Ineffective Assistance* (Grounds 2, 3)

Byford next contends that his direct appeal attorney and his post-conviction relief attorney rendered ineffective assistance because they did not pursue a claim that the trial court record was inaccurate or incomplete. The record reflects that, while Byford's direct appeal and

---

[3] Notably, the U.S. Supreme Court currently is considering whether the Fourteenth Amendment fully incorporates the Sixth Amendment guarantee of a unanimous verdict such that a unanimous verdict is required in both federal and state criminal trials. The Supreme Court heard oral arguments in *Ramos v. Louisiana*, Case No. 18-5924, on October 7, 2019. The petitioner in *Ramos* was tried by a twelve-member jury, ten of whom found him guilty of second-degree murder. Under the Louisiana Code of Criminal Procedure, only ten jurors must concur to render a verdict. *Ramos*, where there was no question that the verdict was not unanimous, is inapplicable to the present case, however, because, as the Alaska Court of Appeals determined, the jury here did not need to unanimously agree as to which of the purposes or designs had been proved in order for its verdict to be unanimous.

post-conviction cases were pending, he filed in December 2012 a *pro se* filing in the superior court in which he alleged that there may have been omissions or misstatements in the trial court record. Because Byford's counseled cases were then pending, the superior court judge ruled that his motion should be filed by Byford's direct appellate attorney in the appellate case, not in a new case lodged in the superior court. Docket No. 43-43 at 2. The record does not indicate that Byford appealed this ruling in either the Alaska Court of Appeals or the Supreme Court. Because of Byford's failure to do so, Respondent urges the Court to dismiss the claim as unexhausted and procedurally defaulted.

In reply, Byford moves for a state and abeyance of these habeas proceedings to allow him to exhaust this claim in state court by filing a successive post-conviction relief application under *Grinols v. State*, 74 P.3d 889, 896 (Alaska 2003).[4] District courts have the authority to issue such stays to allow petitioners to return to state court to exhaust their state remedies but only "where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Under *Rhines*, a district court may stay a federal habeas petition containing both exhausted and unexhausted claims if: 1) good cause exists for failure to have first exhausted the claims in state court; 2) the claim or claims at issue potentially have merit; and 3) the petitioner has not intentionally delayed pursuing the litigation. *Id.* at 277-78.

Byford fails to show that a stay is warranted here. Although the Ninth Circuit has held that ineffective assistance of appellate or post-conviction counsel may constitute good cause under *Rhines*, bald assertions, without more, are insufficient to demonstrate the requisite ineffective assistance. *Blake v. Baker*, 745 F.3d 977, 983 (9th Cir. 2014). "An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a

---

[4] The Alaska Court of Appeals held in *Grinols* that "a defendant may be entitled to relief if they can later prove that their [first] post-conviction relief attorney's performance was not competent, and they must be allowed an opportunity to present this claim in a second petition for post-conviction relief." *Grinols v. State*, 10 P.3d 600, 618 (Alaska App. 2000), *aff'd*, 74 P.3d 889.

-11-

petitioner's failure to exhaust." *Id.* at 982 (good cause existed where petitioned offered extensive evidence supporting allegation of ineffective assistance, including psychological evaluation reports, a declaration by the private investigator who worked for his counsel, and over a dozen declarations from family and friends describing his childhood conditions, and the petitioner explained how that evidence showed good cause). Here, Byford provides nothing more than his assertions that the trial court record was inaccurate or misleading, and thus fails to provide evidence that appellate or post-conviction counsel were ineffective in failing to move to correct it. In his motion in superior court, he identifies the following "examples of omissions" in the record:

1. During the Suppression Hearing Judge Ashman stated his belief as to the credibility of Sue Wright's testimony and to State Investigator Papasodora for accepting any and all evidence from her. (stated on record and during the court of the hearing) In current transcript should have been located [on] page 89 after line 19
2. Daniel Cheyette, Prosecutor for the State made inflammatory and prejudic[ial] remarks about Byford during jury selection which tainted the entire jury pool.
3. Andrew Haas, Defense Counsel made inflammatory and prejudic[ial] statements to the jury pool during selection which left doubt in the potential jurors about his belief of Byford's innocen[ce].
4. Andrew Haas, Defense Counsel in opening remarks during trial closing congratulated Daniel Cheyette on a great prosecution and Investigator Papasodora on a job well done.
5. At least one witness for the State (Clint Hall) had their perjured testimony omitted.
6. Recordings of bench conferences between attorney[s] and the judge [a]fter Byford was excused from courtroom daily there were private conferences.

Docket No. 43 -43 at 4.

But he provides no reason to believe the existence of these alleged omissions, and an independent review of the transcript does not indicate that anything in that record is improper. This lack of evidentiary support is fatal to his stay request, as Byford fails to establish either the requisite good cause or that the claim is not plainly meritless. *See*, *e.g.*, *Sadowski v. Grounds*, 358 F. Supp. 3d 1064, 1070-72 (C.D. Cal. 2019) (no good cause where petitioner neither pointed to any specific evidence to support his argument nor explained how such evidence established good cause).

Furthermore, this Court may decide the claim on the merits notwithstanding the lack of exhaustion of state court remedies. 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Byford's bare and conclusory allegation that appellate and post-conviction counsel were ineffective for failing to move to correct the record is likewise meritless and manifestly insufficient to warrant habeas corpus relief. *See Jones v. Gomez*, 66 F.3d 199, 204–05 & n.1 (9th Cir. 1995); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("self-serving statement" insufficient to raise claim for relief). Byford is thus not entitled to relief on this claim in any event.

C.   *Ineffective Assistance re: Accounting Expert* (Ground 4)

Finally, Byford claims that his trial counsel was ineffective for failing to consult and obtain an accounting expert to assist him in preparing for trial and to testify regarding Byford's business finances. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective

-13-

assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Byford must show that trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

The Ninth Circuit remains sensitive to the issue of retaining and consulting with defense experts. *See, e.g.*, *Weeden v. Johnson*, 854 F.3d 1063, 1070-71 (9th Cir. 2017) (holding that trial counsel was deficient in failing to seek psychological evaluation about effect of petitioner's youth on her mental state); *Richter v. Hickman*, 578 F.3d 944, 953-54 (9th Cir. 2009) (en banc) (trial counsel's failure to consult an expert in blood evidence constituted ineffective assistance), *rev'd by Harrington v. Richter*, 562 U.S. 86 (2011). The cases finding ineffective assistance based on defense counsel's failure to consult with an expert or offer expert testimony appear to involve situations where the prospective defense expert testimony would: 1) exonerate the defendant; 2) conflict with powerful expert testimony offered by the Government; 3) significantly weaken adverse Government expert testimony; and 4) aid in preparing defense counsel's cross-examination of the adverse Government expert testimony.

Here, however, Byford's claim is not that trial counsel was ineffective for failing to

-14-

consult an expert, but rather that he used the wrong expert.[5] According to Byford, trial counsel was incompetent for failing to obtain an independent financial expert to testify on Byford's behalf and instead relying on Byford's fiancee, an accountant with more than 25 years of experience who testified that she discovered problems in Byford's records and subsequently took over the management of his business, to counter the State's financial expert's testimony. Byford contends that such decision constituted ineffective assistance because the fiancee would appear biased and lacked the proper credentials.

In *Hinton v. Alabama*, 571 U.S. 263 (2014) (*per curiam*), the petitioner challenged his defense counsel's "failure to request additional funding in order to replace an expert he knew to be inadequate . . . ." 571 U.S. at 274. Although the attorney believed that he could not seek additional funding, "cursory" legal research would have revealed to him that such funding was available. *Id.* Undertaking a "straightforward application" of *Strickland* and its progeny, the Supreme Court ruled that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Id.* at 272, 274. The Court therefore concluded that "it was unreasonable for Hinton's lawyer to fail to seek additional funds to hire an expert where that failure was based not on any strategic choice but on a mistaken belief that available funding was capped at $1,000." *Id.* at 273. The case was remanded for a determination of whether the defendant had been prejudiced by his attorney's deficient performance. *Id.* at 276. Here, however, Byford has not identified a mistaken belief, whether on a point of law or fact, which he believes caused his attorney to decide not to hire and call a particular witness.

---

[5] Like Ground 3, the parties agree that post-conviction counsel did not fully exhaust this claim because it was not raised to the Alaska Supreme Court. Docket No. 47 at 17. "[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar." *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002); 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Accordingly, this Court declines to dismiss the claim solely on exhaustion grounds.

-15-

Accordingly, *Hinton* is not applicable here.

Moreover, *Strickland* and its progeny hold that the choice of what type of expert to use is one of trial strategy and deserves "a heavy measure of deference." *Turner v. Calderon*, 281 F.3d 851, 876 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 691). As the Supreme Court stressed in *Hinton*:

> The selection of an expert witness is a paradigmatic example of the type of 'strategic choice' that, when made 'after thorough investigation of the law and facts,' is 'virtually unchallengeable.' . . . .
> We wish to be clear that the inadequate assistance of counsel we find in this case does not consist of the hiring of an expert who, though qualified, was not qualified enough.

571 U.S. at 274-75 (quoting *Strickland*, 466 U.S. at 690-91).

Although the Alaska Court of Appeals agreed that, "based on [the post-conviction relief] pleadings, there may be good reason to be critical of the trial attorney's failure to obtain an independent financial expert to testify for the defense," *Byford*, 2017 WL 1040352, at *3, it is axiomatic that counsel is not constitutionally ineffective because, with the benefit of hindsight, other strategies or experts may have been a better choice, *Turner*, 281 F.3d at 876. As the Ninth Circuit has observed:

> [Courts] must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' *Strickland*, 466 U.S. at 689. [An expert] cannot be deemed ineffective because, with the benefit of hindsight, we now determine that other trial strategies or expert witnesses may have been a better choice. *See id.* at 689-90 ('Even the best criminal defense attorneys would not defend a particular client in the same way.') (citation omitted); *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) ('We will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight.'). Thus, although a [different] expert may have produced stronger, more persuasive testimony, [the petitioner's] employment [of the expert used at trial] was not constitutionally ineffective.

*Id.*

The claim before this Court is whether the choice of expert at Byford's trial constituted ineffective assistance. Although the pleadings proffered in the post-conviction relief proceedings also give this Court pause, in light of the record before it, in which, as the Court of Appeal noted, the "prosecution . . . downplayed the significance of the financial testimony in the

-16-

case," *Byford*, 2017 WL 1040352, at *2, it cannot be said that the Court of Appeals unreasonably applied or contravened *Hinton* or *Strickland*.

Byford complains that post-conviction counsel rendered ineffective assistance in raising this claim to the Court of Appeals because she did not retain a third-party expert to demonstrate that Byford was prejudiced by trial counsel's choice of expert. The Court of Appeals rejected Byford's claim on post-conviction review, reasoning that Byford failed to plead a *prima facie* case for relief because he "also needed to offer reason to believe that obtaining an independent financial expert would have actually made a difference in the outcome of Byford's case," and "failed to offer any evidence from an independent financial expert who had reviewed the records in this case." *Byford*, 2017 WL 1040352, at *3. Recognizing that post-conviction counsel failed to fully exhaust this claim, *see* footnote 5, *supra*, Byford asks this Court to grant a stay to allow him to likewise pursue a *Grinols* claim alleging ineffectiveness of post-conviction counsel.

Again, however, Byford provides no evidence before this Court in support of his claim or his stay request. Rather, Byford claims that "any failure of proof to establish *Strickland* ineffectiveness of prior counsel—both criminal defense trial counsel and first-tier post-conviction relief counsel—for failing to obtain an expert opinion from a third-party CPA will be remedied through the subsequent post-conviction relief litigation in state court pursuant to the stay and abeyance as Byford will, of course, have to secure such an opinion to complete the record and to prove any such *Strickland* ineffectiveness o[f] both trial and post-conviction counsel." Docket No. 47 at 17. As discussed *supra*, however, such bare allegation is wholly insufficient to establish the requisite good cause or potential merit required to warrant a *Rhines* stay. For Byford to show that a stay was warranted, it was incumbent upon him to provide such evidentiary support in *this* Court. Byford is thus not entitled to habeas relief, nor is he entitled to an order staying the Petition and holding it in abeyance.

## V. CONCLUSION AND ORDER

Byford is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 17, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
